## NERNEY v. NEW YORK, N. H. & H. R. CO.
### No. 2061.

District Court, D. Connecticut.
April 5, 1934.

Robert S. Blair, of New York City, for plaintiff.

Percival H. Truman, of Chicago, Ill., for defendant.

THOMAS, District Judge.

This is a suit in equity for an injunction and accounting based upon alleged infringement of patent No. 1,665,862, granted April 10, 1928, to Royal Railway Improvements Corporation, as assignee of the inventor, W. H. Sauvage. The suit is brought against the New York, New Haven & Hartford Railroad Company, but the Ajax Hand Brake Company, manufacturer of the brakes on which the charge of infringement is based, has openly controlled and conducted the defense as shown by the record.

The patent in suit is entitled "Hand Brake," and its invention appears to deal principally with the hand-operated apparatus for controlling the brakes of railway cars. Its construction shows that it is provided with a rigid iron casing which not only houses and protects the working parts, but, by its connection with these parts, resists the severe stresses of use and performs other functions as well. Within this casing are the drum or sheave for hauling up the brake chain, gearing having bearings in the casing and driving the drum from a shaft, and a pawl coacting to hold the chain while the brake is applied and after it is set. Outside the casing are the hand wheel to operate the shaft and a swinging weighted lever adapted, as it is swung over in one direction or the other, to throw the pawl in one or the other direction and hold it in the position into which it is moved.

Claims 3 and 4 are in suit and deal with the above construction in more or less detail. They read:

"3. In an apparatus of the character described, in combination, a housing having an opening in its under side thru which an actuating chain is adapted to pass, means adapted to secure said housing to the vertical

end wall of a car or the like, a horizontally disposed shaft mounted in bearings in the side walls of said housing, a chain sheave on said shaft within said housing, a chain having a non-slip coactive relation with said sheave and extending thru said opening in the bottom of said housing, a gear on said shaft parallel to said sheave, a second shaft mounted in said housing, a gear mounted on said shaft and meshing with said first gear, an actuating member mounted on said second shaft outside of said housing, whereby said shaft may be rotated to drive the first shaft and the sheave mounted thereon, a pawl mounted in said housing and coacting to hold one of said gears against rotation, and a counter-weighted arm outside of said housing and cooperating with said pawl adapted to hold said pawl in the desired position according to which way said lever is moved.

"4. In an apparatus of the character described, in combination, a housing of general inverted U-shaped construction having substantially closed top and side walls and provided with an opening in its under side thru which a chain is adapted to pass, means for securing said housing in substantially vertical position, a shaft mounted in bearings in the front and rear walls of said housing, a chain sheave on said shaft, a chain having a non-slip coactive relation with said sheave and extending thru the opening in the bottom of said housing, a relatively large gear associated with said sheave and rotatable therewith, a smaller gear meshing with the first gear, a shaft upon which said smaller gear is mounted, bearings in the walls of said housing for said second shaft, a hand wheel for turning said second shaft mounted on the outside of said housing, a pivoted pawl in said housing and coacting to hold one of said gears against rotation, and a counter-weighted arm outside of said housing for moving said pawl on its pivot relative to said gear thereby to hold the said pawl in the position to which it is moved."

Claim 4 shows the feature of a casing of the general form of an inverted U through the open bottom of which the brake chain passes freely without perforating the walls, and so preventing the entry and accumulations of snow, ice, sleet, rain, and other foreign matter.

Nothing particularly noteworthy occurred during the prosecution of the application of the patent in suit. The claims here involved were inserted by amendment, but seem to be amply warranted by the original disclosure and the search of the Examiner appears to have been unusually painstaking as will be noted later.

Those earlier working under the Sauvage patent put the invention into use on railroads such as the Norfolk & Western and Southern Pacific, and although this exploitation was on a modest scale the brake worked well.

Defendant uses the so-called Ajax brake. It is unnecessary to detail its construction. Undeniably it has much in common with the Sauvage brake. In fact, to the extent that the Sauvage construction and operation have been described, the description fits Ajax.

As to the remarkable success of the Ajax brake the parties are in complete agreement. So rapid and widespread was the displacement of the old-fashioned staff brake, that one faces the question: To what was this striking success due? Defendant ascribes it, not to advertising or other commercial factors, but to genuine merit inherent in and distinctive of this brake and points to its two patents in evidence—one No. 1,879,973 issued to Burnett on September 27, 1932, and the other, No. 1,911,056, issued to Burnett on May 23, 1933. Patent No. 1,911,056 deals with a bellcrank lever placed at the end sill of the car in the chain leading from the hand brake to the brake rigging under the car. Usually a pulley is used at this point. Defendant claims that the weight of this lever and a rod above it aid in releasing the brakes. But, with a tension on the chain of some thousands of pounds it is hard to believe that the weight of these parts would be a real factor—and even so, they could not exert a thrust through the chain to the brake. Defendant's other patent, No. 1,879,973, concerns a particular release lever mechanism for forcing the pawl out of locking position to give the sudden release of the gears. But the record shows that the simple weighted lever used by those formerly working under the Sauvage patent was ample to force out the pawl and give the sudden release necessary. Accordingly, defendant's attempt to find in its patents something which would account for the sweeping adoption of its brake is far from convincing.

The questions we here face seem, as is usually the case in patent suits, to narrow down to validity and infringement. The claims in suit, of course, mark out the domain the patentee seeks to appropriate. If this field justly belongs to him, and if it be invaded, his complaint is justified. Further-

more there is rarely any short cut available. Defendant suggests that labor could be saved by determining that no claim could be drawn which would be readable upon the patent in suit and Ajax which would not also be readable upon the prior art. Such a research, however, with the number of common elements and characteristics, would require the drafting and testing of a large number of claims, and even then possible claims might be overlooked. It is far more simple to use the claims which the patent itself provides. It is usually the more logical course to consider first the question of validity, and if the claims are held invalid the inquiry ends, as infringement then becomes a moot question. Furthermore, a study of validity aids in appraising the scope of the claims if they are found to be valid.

Defendant's contention that Sauvage is a paper patent is chiefly of interest in connection with validity. The undisputed fact, that those working under the patent placed these brakes in substantial commercial use on cars of the Norfolk & Western and Southern Pacific Railroads negatives the charge of paper patents. These uses, although of limited extent, were of appliances which appear to embody the substance of the claims in suit and were successful. Furthermore, the rapid adoption on a huge scale of the Ajax brake, taken in view of its undeniable similarity to the Sauvage invention, coupled with the unconvincing attempt of defendant to ascribe that success to two minor details, all give a strong impression of genuine intrinsic merit in the patent to Sauvage.

This bears also on defendant's attacks on validity based upon an alleged inoperativeness and lack of utility of Sauvage. As for ambiguity, the claims in suit, although not ideal as selections in English composition, are nevertheless definite and understandable. Furthermore, the elements are so closely knit together in construction and action as to refute the charge of aggregation.

Defendant's defense of invalidity rests principally upon the prior patents to Rochambeau, No. 1,052,967, issued February 11, 1913, and to McWhirter, No. 1,163,675, issued December 14, 1915, and the prior use of the Peacock brake. Comparing Rochambeau with the Sauvage invention, it would seem that there is a general similarity of arrangement, but upon even cursory study of the structure important differences stand out. The device for moving the pawl is inside, not outside the casing, and is intended

to work by the weight of a small part which the brakeman is supposed to slide by the use of a "finger piece." Due to its inaccessibility, there is no control over or possibility of increasing the force if the parts stick. Nowhere is there a weighted swinging lever to be thrown over and thus insure release. Under the severe conditions of practical use —and as to this the parties are in full accord —it seems reasonable to conclude and find that this precarious control would be inoperative. Certainly it is not what the claims in suit call for. Besides, the casing of Rochambeau lacks certain characteristics of Sauvage particularly as set forth in claim 4 of the patent in suit. No actual use of Rochambeau is claimed.

The Peacock brake appears to include all that is pertinent in the Brewster patent, No. 1,487,531, issued March 18, 1924. Both lack a central feature of Sauvage, namely, a rugged casing or housing which not only performs the function of protecting the parts against necessarily severe weather conditions, but also coacts with the brake mechanism in performing its functions and resisting the heavy and sudden stresses to which it is subjected. Not only is this important feature absent, but there is nothing in its place which is even approximately an equivalent. The thin sheet metal cover bent into shape and affixed to the outside of the brake was apparently suggested by the railroad to protect its men from the gears. It was a mere accessory. The lack of this feature appears to have been an important contributing cause of the practical failure of this brake. The frame and other parts, lacking this stiff support, repeatedly broke in use. The initial order of twenty-five brakes taken ten years ago was the last, and I deem this insufficient to meet the test of use. There are other differences, but the above is sufficient to negative any charge that Sauvage is anticipated in the Peacock brake.

The McWhirter patent, No. 1,163,675, shows a brake of the familiar street car type. The pertinence which defendant's expert finds in this patent seems to be largely a matter of terms, for its whole principle of construction and action is different from that of Sauvage. The Sauvage casing with its functions and the Sauvage control are both absent.

Defendant's expert, who is doubtless familiar with the prior art upon which defendant relies, testified that the McWhirter patent is as pertinent as any of this art. Perhaps, in view of this, the above separate

discussion of other prior brakes was unnecessary, but they have been given careful consideration. It is significant that this Mc-Whirter patent is practically the same as the Ackley patent cited by the Examiner against the Sauvage application. In the first place, this evidences the thorough character of the search by the Patent Office, and strengthens the presumption of validity due to the grant of the patent. Secondly, it is always significant when a defendant, after exhaustively searching for material with which to attack the validity of a patent, can point to nothing more pertinent than what the Examiner cited in the proceedings which led to the grant of the patent in suit. The defense of invalidity cannot prevail.

On the question of infringement, defendant argues that the Sauvage patent is limited to an apparatus which, first, can set the brakes by turning in either direction, and, second, has gear teeth acting as ratchet teeth engaged directly by the pawl. Neither of these features is new. Both are found in the patents cited by defendant. Neither of the claims in suit have these limitations. One, if not both, of these features is found in the Sauvage claims not in suit, with the implication that where they were intended they were expressed.

█ As before noted, the claims in suit, reasonably interpreted, are the best measure of the scope of the patent. These claims are clearly readable on the Ajax brake as shown in plaintiff's drawing, Exhibit 5. This requires no straining of the language. In fact, if, as defendant intimates, these claims were deliberately drawn to read on the Ajax brake, it would not be surprising that their terms fitted that structure.

But the defendant contends that the substance of the Sauvage invention is not found in its brake and that infringement, if it exists, is a matter of terms only. Although such cases occur, they are not common. Usually when a claim is valid and reads clearly and freely upon a construction, that claim is infringed.

In furtherance of this argument defendant urges that the Ajax brake has no chain sheave and that its gear teeth are shaped differently from those of the Sauvage patent drawings. As for the first point, both parties used the terms "drum" and "sheave" interchangeably and the witnesses of both parties referred to the "sheave" of the Ajax brake. As this sheave is used for a chain, there is no question but that it is a "chain sheave" and that is what the claims call for. As for the distinction that Ajax attains a nonslipping relation between the chain and sheave by a pin instead of by the interlock of Sauvage, even defendant's expert admitted that it was chiefly psychological.

█ There remains the matter of the shape of the gear teeth. Ordinarily this would be trivial, because it is elementary that a patentee is not limited to the shapes and proportions of parts shown in his drawings. Defendant points, however, to a sentence in the Sauvage specification describing the gears as having teeth substantially as shown in the drawings. But the specification states that the gist of the invention could be embodied in various forms and the claims in suit neither express nor imply any particular shape of the gear teeth. It appears likely that Sauvage believed that gear teeth of the sort shown would be well suited for a double acting pawl—a feature of the claims not here in suit.

Accordingly, it must be held that the claims in suit are infringed in substance as well as in terms, and as defendant has pointed to nothing substantial aside from the Sauvage invention to account for the great success of the Ajax brake, it is fair to assume that that success may properly be ascribed to the Sauvage invention.

█ From the above and foregoing conclusions, it follows that claims 3 and 4 of the Sauvage patent are held to be valid and infringed.

Submit a decree, properly consented to as to form, providing for injunctive relief as well as directing a reference to a master for an accounting, together with a separate order making the above and foregoing the findings of fact and conclusions of law. Costs to be taxed in favor of the plaintiff.